IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| United States of America | Case No.: 23-cr-50005 |
| v. | Judge Iain D. Johnston |
| Steven Baxter | |

MEMORANDUM OPINION AND ORDER

Defendant Steven Baxter moves to dismiss the indictment against him, which alleges that he possessed a firearm as a prohibited person under 18 U.S.C. § 922(g)(1). Baxter's Renewed Motion to Dismiss the Indictment is denied because the federal felon in possession statute is constitutional, both facially and as applied to him.

I. Background

In 2023, a federal grand jury indicted Defendant Steven Baxter of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). According to the indictment, Baxter knowingly possessed a loaded Glock after previously having been convicted of a crime punishable by a term of imprisonment exceeding one year. Indictment as to Steven Baxter (Dkt. 3), 1. All told, Baxter has four prior felony convictions, including aggravated assault and battery, burglary, drug distribution, and importing/ manufacturing firearms. Def. Renewed Mot. to Dismiss (Dkt. 66), 1.

Baxter moved to dismiss the 2023 indictment under the Second Amendment, arguing that firearm restrictions like those in § 922(g) are unconstitutional, following *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 (2022). While his

1

Motion to Dismiss the Indictment was pending, the Seventh Circuit decided *United States v. Gay*, 98 F.4th 843, 847 (2024), rejecting a Second Amendment challenge to § 922(g)(1) brought by a parolee with twenty-two prior convictions. This Court denied Baxter's Motion to Dismiss the Indictment accordingly, with leave to refile an as-applied challenge. Min. Entry before the Hon. Iain D. Johnston as to Steven Baxter (Dkt. 57). He did.

In his Renewed Motion to Dismiss the Indictment, Baxter argues that his prosecution under § 922(g) is unconstitutional, as the statute is applied to him, because it regulates conduct protected by the "plain text"[1] of the Second Amendment in a manner inconsistent with the American tradition of firearm regulation. *See generally* Dkt. 66. For the reasons explained below, that argument is not persuasive.

## II. Analysis

Much of this analysis is taken from this Court's recent decisions in *United States v. Hurd*, No. 22-cr-50026, 2024 U.S. Dist. LEXIS 196218, at *2 (N.D. Ill. Oct. 29, 2024), and *United States v. Finley*, No. 22-cr-50055s, 2024 U.S. Dist. LEXIS 199852, at *2 (N.D. Ill. Nov. 4, 2024). Looking further back though, in *Bruen*, the Supreme Court laid out the framework to be applied in analyzing regulations that restrict the bearing of arms. 597 U.S. at 17. Rejecting the two-step means-end approach that courts had employed after *District of Columbia v. Heller*, 554 U.S. 570

---

[1] U.S. CONST. amend. II ("A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.")

(2008), the Court introduced a new and fundamentally different two-step test, holding that:

> when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)); *see United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) ("As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition.").

*Bruen*'s two-step is, really, more of a samba: fast-paced with sudden stops and enough turns to dizzy even the most seasoned professionals. As the Court claps, stomps, and turns through *Bruen*'s historical directive—a task that the Supreme Court once called "commonplace . . . for any lawyer or judge"—it offers a different description. *Bruen*, 597 U.S. at 28. *Bruen* exemplifies the phrase "easier said than

3

done."[2] *See Atkinson v. Garland*, 70 F. 4th 1018, 1024 (7th 2023) ("We recognize that asking these questions is easier than answering them.").

The first step under *Bruen* is to determine whether the Second Amendment's plain text covers the regulated conduct. 597 U.S. at 17. Easy enough, in some cases. But when it comes to § 922(g)(1), that's still an open question. Neither the Supreme Court nor the Seventh Circuit has determined whether the phrase "the people" as used in the Second Amendment includes convicted felons.

The Seventh Circuit has twice been presented with this question and twice declined to answer it. In *Atkinson v. Garland*, the court avoided the issue by remanding with instructions for the government to further develop a historical record surrounding the Amendment's plain text. 70 F.4th 1018, 1023–24 (7th Cir. 2023). The Seventh Circuit sidestepped the textual question again, earlier this year, in

---

[2] A mountain of § 922(g) challenges have piled on the federal bench in recent years. The year after *Bruen* was decided, federal courts adjudicated nearly 400 Second Amendment challenges—230 of which somehow involved § 922(g). Jacob D. Charles, *The Dead Hand of A Silent Past: Bruen, Gun Rights, and the Shackles of History*, 73 Duke L.J. 67, 128 (2023).

Of course, an uptick in litigation after a landmark Supreme Court decision isn't surprising. The same thing happened after *Heller*. In the five years after *Heller* was decided, though, litigants waged just forty-four successful challenges. *Id.* By contrast, *Bruen* created forty-four successful claims in *one year*. *Id.*

Until and unless the Supreme Court offers practical guidance, district courts will "have to give the best answer available," using historical analyses that "no doubt yield some measure of indeterminacy." *Atkinson v. Garland*, 70 F.4th 1018, 1024 (7th Cir. 2023); *see also Wolford v. Lopez*, 2024 U.S. App. LEXIS 22698, at *99 (9th Cir. Sept. 6, 2024) ("First, taking a step back from the historical analysis, the list of places where a State likely may ban, or may not ban, the carry of firearms appear arbitrary.").

4

*United States v. Gay*, when it assumed without deciding that the Second Amendment extends to felons. 98 F.4th at 847.

Parolees have reduced rights to possess firearms under *Gay*, regardless of the Second Amendment's plain text. *Id.* (the right to possess firearms belongs to "law-abiding, responsible citizens") (citing *Bruen*, 597 U.S. at 26). *Gay*'s holding is so narrow, though, that there's no binding precedent on the availability of as-applied challenges to § 922(g)(1) in the Seventh Circuit.

The persuasive precedent offered by the parties is no less confounding. District courts in the Seventh Circuit have reached differing interpretations of "the people" entitled to possess firearms after *Bruen*. *Compare United States v. McKay.*, No. 23 CR 443, 2024 U.S. Dist. LEXIS 74577, at *3 (N.D. Ill. Apr. 24, 2024) ("The 'people' of the Second Amendment are not dangerous felons, so the restriction of their rights to bear arms is not an infringement on the Constitution.") *with United States v. Washington*, No. 23-cr-00274, 2023 U.S. Dist. LEXIS 212149, at *9 (N.D. Ill. Nov. 29, 2023) ("The Court finds that the plain text of the Second Amendment covers all people—including a person convicted of a felony."). Importantly, the district court decision in *Washington* pre-dates the Seventh Circuit's decision in *Gay*.

On the horns of a dilemma, this Court follows *Gay*'s lead in assuming that § 922(g) falls within the ambit of the Second Amendment. That resolves step one under *Bruen* neatly enough, but it doesn't end the analysis. The rights secured by the Second Amendment are not without limits, and prohibitions on felons possessing firearms are presumptively valid. *Heller*, 554 U.S. at 626.

5

The second step under *Bruen* is a historical tradition analysis, asking whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. 597 U.S. at 19. But by directly holding that parolees have reduced rights to possess firearms, *Gay* obviates the need for extended historical discussion. Baxter allegedly possessed a firearm while on supervised release, although he, like Gay, "had promised as part of the agreement to obtain his release that he would not possess a firearm."[3] *Gay*, 98 F.4th at 847. This Court could reject Baxter's as-applied challenge for that reason alone. But Baxter seeks a historical analysis and, to wear a belt and suspenders, the Court indulges him.

To the extent that Baxter is entitled to any historical analysis post-*Gay*, the Court incorporates by reference the many persuasive authorities suggesting the constitutionality of § 922(g)(1). Chief among them is *United States v. Rahimi*, where the Supreme Court rearticulated the presumption that felon dispossession laws are constitutional. 144 S. Ct. at 1902 (citing *Heller*, 554 U.S. at 627). *Rahimi* bolsters *Gay*'s conclusion that, as identified in both *Bruen* and *Heller*, the Second Amendment historically allowed restrictions of certain individuals who posed danger.

Baxter reads *Rahimi* more narrowly, to reach the opposite opinion. Def.'s Reply in Support of Renewed Mot. to Dismiss (Dkt. 75), 2—7. In his view, *Rahimi*

---

[3] Firearm forfeiture is a standard condition of supervised release. UNITED STATES COURTS, *Appendix: Standard Condition Language (Probation and Supervised Release Conditions)*, https://perma.cc/GR8Q-ZC7X (last visited Nov. 5, 2024). ("You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).").

abrogates *Gay*'s "law-abiding, responsible citizen" language, 98 F.4th at 846, because the *Rahimi* Court found "responsibility," standing alone, too vague a criterion to deny firearm possession. 144 S. Ct. at 1903.[4] And there lies the issue with Baxter's reading of *Gay*: in that case, "responsibility" doesn't stand alone.

The Seventh Circuit upheld § 922(g)(1) as applied to Gay, more broadly, because the Nation's Second Amendment jurisprudence "allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 1902; *see Heller*, 554 U.S. at 626; *see McDonald v. City of Chi.*, 561 U.S. 742, 786 (2010); *see also Gay*, 98 F.4th at 847 ("Parole is a form of custody. Gay's sentences had not expired; all parole did was allow him to serve some of his sentences outside prison walls. Just as . . . parolees lack the same privacy rights as free persons, we conclude that parolees lack the same armament rights as free persons.").

Perhaps somewhat owing to the Supreme Court's dicta,[5] the vast majority of courts agree that our Nation's history allows the government to disarm criminal offenders. *See United States v. Barwicks*, No. 20-cr-00563, 2024 U.S. Dist. LEXIS 63746, at *10 (N.D. Ill. Apr. 8, 2024) (collecting cases and citing to a government

---

[4] Baxter asks this Court to play with fire and find that the Seventh Circuit's controlling decision in *Gay* was abrogated by *Rahimi*. The Court declines that invitation. *In re Deere & Co. Repair Serv. Antitrust Litig.*, 703 F. Supp. 3d 862, 881 n.14 (N.D. Ill. 2023) (rejecting argument that this Court find that controlling Seventh Circuit authority was subsequently overruled by a Supreme Court decision).

[5] Without giving a reason, Baxter asks the Court not to rely on dicta from the Supreme Court. Def.'s Reply in Support of Renewed Mot. to Dismiss, 5—6. With the plethora of procedural questions left open by *Bruen*, frankly, beggars can't be choosers. This Court takes all the guidance it can get on faithfully executing *Bruen*'s historical mandate, both binding and persuasive.

exhibit listing 360 district court rulings upholding § 922(g)(1) after *Bruen*).[6] At least ten judges in the Northern District of Illinois have recently allowed prosecutions under § 922(g)(1). *United States v. Head*, No. 23 CR 00450-1, 2024 U.S. Dist. LEXIS 90882, at *12 (N.D. Ill. May 21, 2024) (collecting cases). And interestingly—though not at all dispositive—in the year after *Bruen* was decided, less than 3% of all motions to dismiss felon in possession charges were successful. Jacob D. Charles, *The Dead Hand of A Silent Past: Bruen, Gun Rights, and the Shackles of History*, 73 Duke L.J. 67, 127 (2023).

Today, this Court joins that majority in holding that § 922(g)(1) survives *Bruen*. The statute is not only facially constitutional; the fact that Baxter has multiple criminal convictions supports a finding that it was constitutionally applied to him also. *See United States v. Donald*, No. 20-CR-832, 2024 U.S. Dist. LEXIS 82487, at *7 (N.D. Ill. May 6, 2024) (rejecting as-applied challenge by defendant with two non-violent felonies, both over seven years old).

No doubt, the government bears the burden of proving the constitutionality of a firearm regulation. *Bruen*, 597 U.S. at 24. But the government can meet this burden by showing a historical tradition of dispossessing groups based on legislative determination of dangerousness. *Bruen*, 597 U.S. at 24; *Donald*, 2024 U.S. Dist. LEXIS 82487, at *6. It did so in this case. The historical record shows that the government may categorically disarm felons, not based on their propensity for

---

[6] What is dicta is often in the eye of the beholder. *Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 136 n.6 (3d Cir. 1976).

Case: 3:23-cr-50005 Document #: 77 Filed: 11/05/24 Page 9 of 11 PageID #:299

violence, but on a broader belief that felons, as a class, are unlikely to respect the rule of law. U.S. Resp. to Def.'s Mot. to Dismiss (Dkt. 51), at 11.

On the other hand, Baxter presents evidence that courts have historically conducted individualized "dangerousness" assessments to determine whether members of persecuted groups are entitled to possess firearms. Def.'s Reply in Support of Renewed Mot. to Dismiss, 13. For instance, although Native Americans were categorically barred from firearm possession, colonial courts established formal legal channels for some tribe members to have their Second Amendment rights reinstated, by obtaining a "ticket" or "order" authorizing possession. *Id*. at 13—14.

In that sense, the historical record underscores *Gay*'s point that challenges to § 922(g) must occur through the proper legal channels. And, as *Gay* notes, the proper procedure for as-applied challenges to § 922(g) is by declaratory judgment action. 98 F.4th at 847. This Court is duty bound to consider that Baxter "violated the law in secret and tried to avoid detection," instead of challenging the statute lawfully. *Id*. And his historical analogues do not control, for that reason alone.

But to the extent that Baxter insists on an individualized assessment of his status as a person who could historically be prohibited from possessing firearms, here goes: Baxter's history of felony drug and firearm convictions poses credible public safety threats. His convictions run the gamut. Over the last thirty years, Baxter has mishandled firearms, participated in the drug trade, burglarized, and used violence against others. Def.'s Reply in Support of Renewed Mot. to Dismiss, 1.

9

Baxter tries to minimize his criminal history by comparing it to the defendant's in *Gay*. *Id.* at 7. Certainly, Baxter's criminal history—both in number and level of violence— isn't as extensive as Gay's. But *Gay* doesn't set a minimum number of convictions that justifies disarming a citizen, and this Court is hard pressed to believe that there *is* a magic number, squirreled away somewhere in the double-digits.

Furthermore, in arguing that his last violent felony is for assault and battery, Baxter minimizes his subsequent convictions for burglary and drug distribution. Everyone involved in the criminal justice system knows that the drug trade involves violence. *United States v. Landolt*, 1:09-CR-181, 2011 U.S. Dist. LEXIS 52871, at *23 (E.D. Tenn. Mar. 15, 2011) ("Like peanut butter and jelly, drugs and guns often go together."); *see United States v. Askew*, 403 F.3d 496, 508 (7th Cir. 2005) ("Drug crimes are associated with dangerous and violent behavior.").

Historically, just one prior conviction justified disarmament, and Baxter exceeds that threshold. So, clearly, disarming Baxter is consistent with the Nation's regulatory scheme for limiting firearm possession to "law-abiding, responsible citizens." *Gay*, 98 F.4th 843 at 846.

### III. Conclusion

For the reasons explained above, Baxter's Renewed Motion to Dismiss Count II of the Indictment [66] is denied. Under this Nation's historical tradition of firearm regulation allowing for categorical restrictions of certain people from possessing firearms, § 922(g)(1) is not unconstitutional as applied to Baxter.

Entered: November 5, 2024　　　　　　　　　　By:_____
　　　　　　　　　　　　　　　　　　　　　　Iain D. Johnston
　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge